STATE OF NEBRASKA, APPELLEE, V. RICHARD SCHMIDT, SR., APPELLANT.

327 N.W.2d 624

Filed December 17, 1982. No. 82-147.

David A. Bush, for appellant.

Paul L. Douglas, Attorney General, and Lynne Rae Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

On June 15, 1981, the appellant, Richard Schmidt, Sr. (Schmidt), was charged in an amended complaint with the crimes of attempted murder in violation of Neb. Rev. Stat. § 28-201 (Reissue 1979) and kidnapping in violation of Neb. Rev. Stat. § 28-313(1) (Reissue 1979). Following a preliminary hearing, Schmidt was bound over to the District Court for trial on both charges. He waived his right to a jury trial, and trial to the court commenced on January 11, 1982. At the conclusion of the trial he was found guilty of both offenses. Following the overruling of his motion for new trial, appellant was sentenced to concurrent terms of 7 to 15 years on the charge of attempted murder and 2 to 5 years on the charge of kidnapping, and he appealed to this court. Having reviewed the record in this case, we find that both the conviction entered by the trial court and the sentence imposed are in all respects correct, and affirm both the conviction and sentence.

Schmidt has assigned a number of errors. His first assignment of error is, in essence, that the evidence was insufficient to find him guilty beyond a reasonable doubt of the offenses charged. The record simply will not support that claim. There was more than sufficient evidence presented to the trial court from which the trial court could find beyond a reasonable doubt that on June 10, 1981, Schmidt, then being separated from his wife, Charlette

Schmidt, the victim in this case, contacted his wife and asked her to meet him at his partment so that they could go to pick up a gift that Schmidt told her she would enjoy. Schmidt directed his wife to come alone and to bring her own car. After arriving at Schmidt's apartment, Schmidt offered to drive, and his wife accepted. Schmidt drove to a gas station where he purchased gas, and then he drove his wife to a secluded country road in Hall County. Schmidt stopped the car on the shoulder of the road and informed his wife that he was leaving, taking only his clothes. He then handed her a letter and asked her to recopy it for him because, he maintained, the letter expressed her feelings about him and he wanted to keep this letter to remember her wherever he went. However, the letter actually referred to his wife leaving, instead of Schmidt. She refused to write the letter and asked Schmidt to take her home. Schmidt insisted that she rewrite the letter, and she finally acquiesced and rewrote the letter with a pen and stationery provided by Schmidt. Schmidt then gave her an envelope and instructed her to address it to his apartment and to place in it the rewritten letter. After she sealed the envelope, Schmidt took it from her.

Schmidt then asked his wife to go for a walk with him in the secluded area. She refused, and again requested that she be taken home. Schmidt got out of the car, walked around to the passenger side where his wife was seated, opened the door, and dragged his wife from the car. He continued to drag her through a vacant field a distance of about 100 to 150 yards into a grove of trees. Schmidt then forced his wife through some branches into a secluded clearing surrounded by trees and brush and attempted to place around her neck a piece of nylon rope with a loop tied into it. His wife struggled to get free, but could not. During the course of the struggle, however, the rope slipped down around her neck, causing the knot to come apart. She tried to

grab the rope to throw it away, but Schmidt retrieved it and tried to get it around her neck again. The attempt was unsuccessful and she struggled free. While on her knees, she pleaded with Schmidt to stop it, reminding him of a letter from a mutual friend and stating that the children did not deserve a broken home. She promised to come back to Schmidt and do anything he desired. At his request, she kissed him. She then asked Schmidt to take her home and they headed back for the car. Schmidt then returned his wife to her home and, believing her promise that they would reconcile, went home to change his clothes. Following an investigation of the incident, Schmidt was arrested by a sheriff's lieutenant 2 days later.

We have often stated that in reviewing criminal cases this court will not set aside the judgment of the trial court if there is sufficient evidence, taking the view most favorable to the State, to support the judgment. *State v. Parks,* 212 Neb. 635, 324 N.W.2d 673 (1982); *State v. King,* 204 Neb. 47, 281 N.W.2d 226 (1979). The question presented to us by these assignments of error is whether the evidence introduced at trial and viewed most favorably to the State establishes the elements of the crimes charged beyond a reasonable doubt. Section 28-313 as relevant to this case defines kidnapping as follows: "(1) A person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to do the following: . . . (c) Terrorize him or a third person; or (d) Commit a felony . . . ." Section 28-201 as relevant to this case defines criminal attempt as follows: "(1) A person shall be guilty of an attempt to commit a crime if he: . . . (b) Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime. (2) When causing a particular result is an element of the crime, a person shall be guilty of an attempt to

commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, he intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.'' We believe that the facts in this case more than adequately establish that Schmidt abducted his wife against her will and took her to the secluded area for the purpose of strangling her. It would be difficult to argue that the evidence did not prove that Schmidt abducted his wife and continued to restrain her for the purpose of either terrorizing her or committing a felony. One would further be hard pressed to argue that his dragging her through a field against her will and placing a rope around her neck in an attempt to strangle her did not establish a violation of both offenses charged. See *State v. Sodders,* 208 Neb. 504, 304 N.W.2d 62 (1981). We believe the evidence was sufficient, taking the view most favorable to the State, to find that the elements of both §§ 28-201 and 28-313(1) were established and the law violated. The assignment therefore is without merit.

A second error assigned by Schmidt is that he was denied a preliminary hearing both in form and in substance and, thus, the trial court erred in overruling his plea in abatement. In view of what we have just said concerning the sufficiency of the evidence, this assignment must likewise be overruled. The general rule in this jurisdiction is that any error by the District Court in ruling on a plea in abatement is cured by a subsequent finding by the "trier of fact" of guilt beyond a reasonable doubt. See, *State v. Franklin,* 194 Neb. 630, 234 N.W.2d 610 (1975); *State v. Brehmer,* 211 Neb. 29, 317 N.W.2d 885 (1982); *State v. Lehman,* 203 Neb. 341, 278 N.W.2d 610 (1979). Under the circumstances in this case, this assignment therefore is likewise without merit.

The third assignment of error is that the trial court erred in finding Schmidt guilty of kidnapping,

in that the kidnapping was simply a part of another offense. This argument has been presented to this court on previous occasions and rejected. In *State v. Pankey,* 202 Neb. 595, 598, 276 N.W.2d 233, 235 (1979), quoting from *State v. Goham,* 187 Neb. 34, 187 N.W.2d 305 (1971), we said: " 'The purpose of kidnapping in every instance is to make it possible to commit some other crime. Its very nature therefore embraces other crimes as well as that of kidnapping. The penalties of kidnapping are intentionally more severe than the other crimes which may be included because of the consequences which often result from its perpetration.' " The evidence in this case established a classic kidnapping violation. That violation occurred even before anything more took place. One may not erase the commission of a crime simply because, after committing the crime, a second crime is committed. The assignment is overruled.

Schmidt further argues that even if he had committed the crime of attempted murder, the act was completely and voluntarily abandoned and therefore, under the provisions of the Model Penal Code from which our § 28-201 is patterned, the act of abandonment should be considered as an absolute defense to the instant charge. While it is true that the Model Penal Code, which was used as a guideline by the Legislature when it adopted § 28-201, does contain the defense of abandonment in § 5.01(4) (Tent. Draft No. 10, 1960), it is further true that the defense was not included in the act when adopted by the Legislature. Nor can it be said that the omission of the defense of "voluntary abandonment" in connection with the crime of criminal attempt was either an oversight by the Legislature or due to its failure to know that such a defense could have been included when it adopted the criminal attempt statute in 1977. At the same time that § 28-201 was adopted, the Legislature also enacted Neb. Rev. Stat. § 28-202 (Reissue 1979), the crime of "con-

spiracy." As a part of the crime of criminal conspiracy, the Legislature specifically adopted the defense of abandonment or renunciation of criminal intent. See Neb. Rev. Stat. § 28-203 (Reissue 1979). The defense, however, was limited to the crime of conspiracy under § 28-202, and did not include criminal attempt, § 28-201. Schmidt concedes that this defense has never been adopted in Nebraska but maintains that this court should nevertheless treat abandonment as an affirmative defense to be judicially grafted into the statutes. If that portion of the Model Penal Code is to become a part of the substantive law of the State of Nebraska, it is for the Legislature to do, and not for this court. Since abandonment is not a defense to the commission of the crime of criminal attempt under Nebraska law, Schmidt's assignment of error is without merit.

Schmidt's final assignment of error is that the trial court abused its discretion in sentencing him to two concurrent terms of 7 to 15 years for the offense of attempted murder and 2 to 5 years for the offense of kidnapping. Both the offenses of attempted murder and kidnapping are Class II felonies punishable by a minimum of 1 year's imprisonment and a maximum of 50 years' imprisonment. In reviewing the sentences imposed by trial courts we are, of course, bound by our long-established rule that a sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. See, *State v. Beckner,* 211 Neb. 442, 318 N.W.2d 889 (1982); *State v. Prosser,* 209 Neb. 766, 311 N.W.2d 525 (1981). As we have already indicated, the evidence clearly establishes that Schmidt intended, on the day in question, to kidnap his wife and to bring about her death by strangulation. It was only by reason of events beyond his control that he was not able to immediately carry out his plan, and then only because of his wife's pleading and promises did he give up his plan. But for circumstances not of Schmidt's own doing, he might well have been charged with

the murder of his wife. His offers of excuse to the crimes are not very impressive under the circumstances. Kidnapping and attempted murder as Class II felonies are considered by the Legislature to be among the most serious crimes one can commit. The sentences imposed were at the minimum end of the spectrum. We are unable to say that, under the facts of this case, the trial court abused its discretion. The final assignment of error therefore must also be overruled.

Having overruled all of Schmidt's assignments of error, we therefore affirm the judgment and sentences of the trial court.

AFFIRMED.